UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------X    Dkt. No: 26 Civ. 6588

STEPHANIE DULUC,

                                             Plaintiff,

               - against -

**COMPLAINT**

NEW YORK YANKEES PARTNERSHIP d/b/a NEW YORK YANKEES, YANKEE STADIUM HOLDINGS LLC, PROMATS ATHLETICS, LLC, SPORTSFIELD SPECIALTIES, INC., as successor in interest to Promats Athletics, LLC, and JOHN DOE NETTING DEFENDANTS 1-10,

**JURY TRIAL DEMANDED**

**ECF CASE**

                                         Defendants.

--------------------------------------------------------------------------X

       Plaintiff, STEPHANIE DULUC (hereinafter "Ms. Duluc" or "Plaintiff"), by her attorneys, Jon L. Norinsberg, Esq., PLLC, complaining of Defendants, NEW YORK YANKEES PARTNERSHIP d/b/a NEW YORK YANKEES, YANKEE STADIUM HOLDINGS LLC, PROMATS ATHLETICS, LLC, SPORTSFIELD SPECIALTIES, INC., as successor in interest to Promats Athletics, LLC, and JOHN DOE NETTING DEFENDANTS 1-10, (collectively, the "Defendants"), respectfully states as follows:

## PRELIMINARY STATEMENT

1.      This is a personal injury action arising out of a violent and entirely preventable incident at Yankee Stadium.

2.      On June 2, 2026, during a Major League Baseball game between the New York Yankees and the Cleveland Guardians, a Guardians batter lost control of his bat.

3.      The bat flew off the field of play, traveled up and over the protective netting, and entered the spectator seating area directly behind home plate.

1

4.      The bat struck Plaintiff Stephanie Duluc in the head as she sat in her season-ticket seats.

5.      The area behind home plate is the most dangerous location in any baseball stadium. It is the one location where the law has long required a stadium operator to provide adequate protective screening.

6.      Defendants did install netting in front of Plaintiff's section. But that netting was materially lower than the netting protecting the adjacent sections behind home plate.

7.      The lower netting left an open gap above Plaintiff's seats through which a foreseeably airborne bat could, and did, pass.

8.      The incident was captured on the YES Network broadcast of the game.

9.      The broadcast announcers observed in real time that the bat had gone into the stands over the screen, that a woman had been struck, and that she had been knocked down before getting back to her feet. That woman was Plaintiff.

10.      As a direct and proximate result of Defendants' negligence, Plaintiff, a thirty-seven-year-old senior healthcare executive, sustained a traumatic brain injury and other serious and permanent injuries.

11.      Plaintiff has been unable to return to her professional role and continues to suffer disabling symptoms.

12.      Plaintiff brings this action to recover the full measure of damages the law allows.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

14.     The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and this action is between citizens of different States.

15.     Plaintiff is a citizen of New Jersey.

16.     None of the partners or members of the New York Yankees Partnership or Yankee Stadium Holdings LLC is a citizen of New Jersey.

17.     Defendant New York Yankees Partnership d/b/a New York Yankees (hereinafter, the "NY Yankees"), is a limited partnership organized under the laws of the State of Ohio.

18.     Yankee Stadium Holdings LLC is a foreign limited liability company organized under the laws of the State of Delaware, registered to do business in the State of New York.

19.     Promats Athletics, LLC is a citizen of North Carolina. Promats Athletics, LLC is a citizen of North Carolina. Sportsfield Specialties, Inc., as successor in interest to Promats Athletics, LLC, is a corporation with its principal place of business in the State of New York.

20.     Accordingly, no Defendant is a citizen of the same state as Plaintiff.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, namely at Yankee Stadium in Bronx County, New York.

22.     Venue is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside in this District.

## JURY DEMAND

23. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## THE PARTIES

24. Plaintiff, Stephanie Duluc is, and at all relevant times was, a citizen and resident of the State of New Jersey.

25. Plaintiff is thirty-seven years old and is employed as the Chief of Staff of a New York healthcare organization.

26. Defendant New York Yankees Partnership d/b/a New York Yankees (hereinafter, the "NY Yankees"), is a limited partnership organized under the laws of the State of Ohio.

27. The Yankees' principal place of business is located in Bronx County, New York.

28. The Yankees own and operate the New York Yankees Major League Baseball franchise.

29. At all relevant times, the Yankees operated, managed, maintained, and/or controlled Yankee Stadium, including its seating areas and protective netting.

30. Defendant Yankee Stadium Holdings LLC, (hereinafter, the "Yankee Stadium") is a foreign limited liability company organized under the laws of the State of Delaware, registered to do business in the State of New York, with its principal place of business in Bronx County, New York.

31. At all relevant times, Yankee Stadium Holdings LLC owned, operated, managed, maintained, and/or controlled Yankee Stadium, including its seating areas and protective netting.

32. Defendants New York Yankees Partnership and Yankee Stadium Holdings LLC are hereinafter referred to collectively as the "Stadium Defendants."

4

33.    Defendant Promats Athletics, LLC ("Promats") is a limited liability company organized under the laws of the State of North Carolina, with its principal place of business in the State of North Carolina. Promats has been administratively dissolved.

34.    Defendant Sportsfield Specialties, Inc. ("Sportsfield") is the parent corporation and successor in interest to Promats Athletics, LLC, having absorbed Promats following its administrative dissolution. Sportsfield's principal place of business is located at 41155 State Highway 10, Delhi, New York.

35.    Promats and Sportsfield are engaged in the business of designing, engineering, developing, supplying, and installing spectator protective netting systems.

36.    Promats and/or Sportsfield designed, engineered, developed, supplied, and/or installed the protective netting system at Yankee Stadium, including the netting in the area behind home plate.

37.    Defendants John Doe Netting Defendants 1-10, (hereinafter collectively, the "Netting Defendants"), are additional persons or entities whose true names and identities are presently unknown to Plaintiff.[1]

38.    The Netting Defendants designed, engineered, manufactured, supplied, installed, inspected, and/or maintained the protective netting at Yankee Stadium, including any manufacturer or design professional involved in that netting.

39.    At all relevant times, Defendants acted by and through their agents, servants, and employees, who acted within the scope of their agency and employment.

---

[1] Plaintiff will amend this Complaint to substitute the true names of the John Doe Netting Defendants once they are ascertained through discovery.

40.     Defendants are vicariously liable for the conduct of their agents, servants, and employees.

## FACTUAL ALLEGATIONS

41.     On June 2, 2026, Plaintiff attended a Major League Baseball game between the New York Yankees and the Cleveland Guardians at Yankee Stadium, located at 1 East 161st Street, Bronx, New York.

42.     Plaintiff attended the game as a guest of her employer, who was a season-ticket holder.

43.     Plaintiff was seated in Section 017B, Row 4, Seat 2, directly behind home plate.

44.     Plaintiff's seat was located within the zone of greatest danger in the stadium, that is, the area directly behind home plate.

45.     In that area, foul balls, thrown bats, and other objects leaving the field of play most frequently and most forcefully enter the spectator seating areas at a high velocity.

46.     Defendants installed protective netting in front of the section in which Plaintiff was seated.

47.     The protective netting installed in front of Plaintiff's section was significantly lower in height than the protective netting that Defendants installed in front of other sections located behind home plate.

48.     The disparity in the height of the protective netting created an open and unprotected gap directly above Plaintiff's seating section, exposing spectators to a foreseeable and unreasonable risk of being struck by objects leaving the field of play. This dangerous condition violated applicable safety codes, statutes, regulations, and accepted industry safety standards.

49. As a direct result of this defective and unreasonably dangerous design, objects leaving the field of play—including broken bats and baseballs—could travel through the unprotected gap into Plaintiff's seating section at high velocity, whereas those same objects would have been intercepted by the taller protective netting installed immediately adjacent to Plaintiff's section. The absence of equivalent-height netting in Plaintiff's section was a substantial factor in causing Plaintiff's injuries.

50. During the game, a Cleveland Guardians batter lost control of his bat while swinging.

51. The bat was released and rapidly flew off the field of play toward the spectator seating area behind home plate.

52. As a direct consequence of the defective and inadequate protective netting, the broken bat exited the field of play and traveled through the unprotected opening in the screening adjacent to Plaintiff's seating section.

53. The bat then entered the spectator seating area where Plaintiff was lawfully seated at a high rate of speed, penetrating an area that should have been protected by adequate screening and exposing Plaintiff and other patrons to an unreasonable and foreseeable risk of catastrophic injury.

54. At the aforesaid time and location, the bat violently struck Plaintiff on the side of her head with tremendous force. Plaintiff instinctively raised both hands in a desperate attempt to protect herself, but was unable to fully shield herself from the impact. The bat struck Plaintiff's head and hands with such force that it knocked her from her seat and violently threw her to the ground, causing her to sustain severe and permanent injuries.

55. The incident was broadcast live on the YES Network.

56. During the live broadcast, the announcers contemporaneously observed and commented that the broken bat had traveled over and beyond the protective screening and into the spectator seating area.

57. The announcers immediately expressed concern for the safety of the spectators, recognizing that the bat had entered the stands and struck a fan.

58. The live broadcast further depicted that a woman had been struck by the bat, knocked to the ground by the force of the impact, and thereafter regained her footing.

59. The woman observed and described during the live broadcast was Plaintiff.

60. The risk that broken bats, shattered bats, and foul balls would enter the spectator seating areas behind home plate is a well-known, recurring, and entirely foreseeable hazard inherent in Major League Baseball games.

61. Defendants knew, or in the exercise of reasonable care should have known, of that hazard and the serious risk of injury it posed to spectators.

62. Defendants further knew that protective netting behind home plate had to be of sufficient height and extent to prevent or substantially reduce the risk that broken bats, shattered bats, and foul balls would enter the spectator seating areas.

63. Defendants' knowledge of both the hazard and the means to prevent it is demonstrated by their installation of significantly higher protective netting immediately adjacent to Plaintiff's seating section, where they recognized that additional screening was necessary to protect spectators.

64. Nevertheless, Defendants negligently, carelessly, and recklessly designed, installed, permitted, maintained, inspected, and/or approved protective netting in front of Plaintiff's

seating section that was substantially lower than the adjacent netting and inadequate in height and extent to protect spectators from foreseeable projectiles leaving the field of play.

**AS AND FOR A FIRST CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF**
**(Negligence - Premises Liability - New York Yankees and Yankee Stadium LLC)**

65.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above, with the same force and effect as though more fully set forth at length herein.

66.     At all relevant times, Defendants New York Yankees Partnership and Yankee Stadium LLC (collectively, the "Stadium Defendants") owned, operated, managed, maintained, and/or controlled Yankee Stadium, including its seating areas and protective netting.

67.     The Stadium Defendants owed Plaintiff and other spectators a duty to exercise reasonable care to keep the premises in a reasonably safe condition and to protect spectators from foreseeable hazards.

68.     That duty included the obligation to provide adequate protective screening in the area of greatest danger behind home plate, sufficient to protect the spectators seated there from the foreseeable risk of bats and balls leaving the field of play.

69.     The Stadium Defendants breached their duty of care to Plaintiff.

70.     The Stadium Defendants negligently, carelessly, and recklessly installed or permitted the installation of protective netting of insufficient height and extent in front of Plaintiff's section.

71.     The Stadium Defendants negligently, carelessly, and recklessly created and maintained a gap in protection above Plaintiff's seats while providing higher and adequate netting at adjacent sections behind home plate.

72.     The Stadium Defendants negligently failed to inspect, evaluate, and remediate the inadequate netting.

73. The Stadium Defendants negligently failed to warn Plaintiff of the inadequacy of the netting protecting her section.

74. The Stadium Defendants otherwise failed to exercise reasonable care under the circumstances.

75. The harm Plaintiff suffered was a reasonably foreseeable consequence of the Stadium Defendants' aforesaid breaches.

76. As a direct and proximate result of the Stadium Defendants' negligence, a bat that would have been intercepted by adequate netting instead passed over the inadequate netting in front of Plaintiff's section and struck Plaintiff in the head, whereupon she suffered severe and serious personal injuries.

77. The aforesaid occurrence was not caused by or due to any carelessness or negligence on the part of Plaintiff.

78. By reason of the foregoing and the negligence of the Stadium Defendants, Plaintiff has suffered injuries that are severe and permanent in nature, and she will be caused to suffer additional permanent limitations in the future as a result of said negligence.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ON BEHALF OF THE PLAINTIFF**
**(Negligence — Promats Athletics, LLC, Sportsfield Specialties, Inc.,**
**and John Doe Netting Defendants)**

79. Plaintiff repeats, reiterates, and realleges each and every allegation set forth above, with the same force and effect as though more fully set forth at length herein.

80. Defendants Promats, Sportsfield, and John Doe Netting Defendants 1-10 (collectively, the "Netting Defendants") undertook to design, engineer, supply, install, inspect, and/or maintain the protective netting at Yankee Stadium, including the netting in front of Plaintiff's section.

10

81.     The Netting Defendants were obligated to perform those undertakings with reasonable care.

82.     The Netting Defendants negligently, carelessly, and recklessly designed, engineered, supplied, installed, inspected, and/or maintained the protective netting in front of Plaintiff's section.

83.     As a result of the Netting Defendants' negligence, the netting in front of Plaintiff's section was lower and less protective than the netting at adjacent sections behind home plate and was inadequate to protect the spectators seated there from foreseeable objects leaving the field of play.

84.     The Netting Defendants negligently failed to warn of those inadequacies.

85.     As a direct and proximate result of the Netting Defendants' negligence, the bat passed over the inadequate netting in front of Plaintiff's section and struck Plaintiff in the head, whereupon she suffered severe and serious personal injuries.

86.     The aforesaid occurrence was not caused by or due to any carelessness or negligence on the part of Plaintiff.

87.     By reason of the foregoing and the negligence of the Netting Defendants, Plaintiff has suffered injuries that are severe and permanent in nature, and she will be caused to suffer additional permanent limitations in the future as a result of said negligence.

88.     As a direct and proximate result of Defendants' negligence, Plaintiff sustained serious, severe, and permanent personal injuries.

89.     Plaintiff's injuries include a traumatic brain injury and concussion, severe, persistent, and debilitating post-traumatic headaches, a disabling sensitivity to light, injuries to both of her hands, and an injury to her neck.

90.     Plaintiff has suffered and will continue to suffer great physical pain, mental anguish, emotional distress, and loss of the enjoyment of life.

91.     Plaintiff has incurred and will continue to incur expenses for medical care, treatment, and rehabilitation; has been unable to return to her professional duties as Chief of Staff; and has sustained and will continue to sustain a loss of earnings and an impairment of her future earning capacity.

92.     By reason of the foregoing, Plaintiff has been damaged in an amount that exceeds the jurisdictional threshold of this Court and that will be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff STEPHANIE DULUC respectfully requests that this Court enter judgment in her favor and against Defendants, jointly and severally, as follows:

a.  Awarding Plaintiff compensatory damages in an amount of $10,000,000.00, for her past and future physical injuries, pain and suffering, emotional distress, and loss of enjoyment of life;

b.  Awarding Plaintiff damages for her past and future medical and rehabilitation expenses;

c.  Awarding Plaintiff damages for her past lost earnings and the impairment of her future earning capacity;

d.  Awarding Plaintiff pre-judgment and post-judgment interest, costs, and disbursements of this action; and

e.  Granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 1, 2026

Respectfully submitted,

**JON L. NORINSBERG, ESQ., PLLC**


By: _____
Jon L. Norinsberg, Esq.
Gray L. Oxford, Esq.
*Attorneys for Plaintiff*
825 Third Ave., Suite 2100
New York, New York 10022
Tel. No.: (212) 791-5396
Fax No.:  (212) 406-6890
jon@norinsberglaw.com
graham@norinsberglaw.com

13